James E. Cross, Bar No. 009063
Warren J. Stapleton, Bar No. 018646
**OSBORN MALEDON, P.A.**
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
Telephone: (602) 640-9307
Facsimile: (602) 664-2077
E-mail: jcross@omlaw.com
jcross@omlaw.com

Counsel for Brian J. Mullen, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>PREMIERE ACQUISITIONS, LLC,<br><br>LUXURY LOFTS, LLC,<br><br>Debtors. | Chapter 7 Proceedings<br><br>Case No. 2-08-bk-06447-RTB<br>Case No. 2-08-bk-06454-RTB<br>(Jointly Administered)<br><br>Adv. No. 2:09-AP-01676-RTB |
| BRIAN MULLEN, Chapter 7 Trustee of Premier Acquisitions, LLC and Luxury Lofts, LLC,<br><br>Plaintiff,<br><br>v.<br><br>E4 DEVELOPMENT AND CONSTRUCTION SERVICES, an Arizona limited liability company, RICHARD W. ELSEY and JANE DOE ELSEY, husband and wife,<br><br>Defendants. | **CHAPTER 7 TRUSTEE'S COMPLAINT TO AVOID UNAUTHORIZED POST-PETITION TRANSFERS OF ESTATE PROPERTY** |

Plaintiff, Brian J. Mullen, duly appointed Chapter 7 Trustee for the above-captioned bankruptcy estate (the "Trustee"), by and through undersigned counsel, for his claim for relief against E4 Development and Construction Services, LLC ("E4"), Richard W. ("Rick")

Elsey and Jane Doe Elsey, husband and wife, collectively the "Defendants", herein alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff is the duly appointed Chapter 7 Trustee of the jointly administered bankruptcy estates of Premiere Acquisitions, LLC ("Premiere") and Luxury Lofts, LLC ("Luxury Lofts), collectively referred to as the "Debtors."

2. Upon information and belief, Defendants Richard W. Elsey ("Elsey") and Jane Doe Elsey (whose real name shall be supplied when known) are husband and wife and are residents of Maricopa County, Arizona.

3. Defendant E4 Development and Construction Services, LLC ("E4") is an Arizona limited liability company that has its principal place of business in Maricopa County, Arizona.

4. At all times relevant to this Complaint, Elsey was the managing member of E4 and was the chief restructuring officer and Responsible Party of the Debtors.

5. All acts complained of herein were undertaken by Defendant Richard W. Elsey on behalf of himself and the marital community of Richard W. Elsey and Jane Doe Elsey.

6. Pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H), and (O), this is a core proceeding under Title 11 or arising in a case under Title 11 and, as a result, this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(1) and 1334.

7. This adversary proceeding is an action arising, among other things, under ARS § 44-1001, et seq., and/or 11 U.S.C. §§ 544(b), 548, and 550, and is governed by Fed. R. Bankr. P. 7001.

2822481v2

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

**<u>GENERAL ALLEGATIONS</u>**

9. On June 2, 2008 (the "Petition Date"), Debtors filed petitions for relief under Chapter 11 of Title 11, United States Code (the "Code"). Debtors simultaneously filed a motion for joint administration in the low-numbered case (Premiere Acquisitions, LLC).

10. On June 4, 2008, the Court granted the motion for joint administration – jointly administering the cases of Premiere and Luxury Lofts.

11. Premiere was the developer and both Debtors were owners of a majority interest in certain real property (the "Property" or the "Development") located in the City of Flagstaff, Arizona. The Property is a currently incomplete master-planned mixed use subdivision in Flagstaff, south of Route 66, north of Interstate 40, and to the west of downtown Flagstaff. It is commonly known as Presidio in the Pines. The property lacks the necessary infrastructure improvements to allow development and sale of the residential real property lots located therein.

12. Prior to the bankruptcy filing the Debtors entered into an "Agreement for Consulting Services" (the "Agreement") with E4. Under the terms of the Agreement, E4 was the "Consultant," and agreed to perform certain consulting services, including (but not limited to): project management, project administration, bid services, construction management, project scheduling, value engineering and cost estimating, and reporting (to include daily, weekly and monthly reports on the project status and budget). E4 had plenary authority under the Agreement with the exception that any contract in excess of $1,000,000 had to be approved by the managing members of Premiere and/or Luxury Lofts. The

Agreement provided that E4 would receive $15,000 per month for providing these services under the Agreement.

13. When the Debtors filed for bankruptcy Mr. Elsey and E4 were the responsible parties for the Debtors and Debtors in Possession. Mr. Elsey and E4 provided virtually all of the post-petition business operational and administrative management for the Debtors.. The Debtors did submit an application to employ Elsey or E4 as professional persons. The Debtors did not move to assume or reject the pre-petition Agreement with E4, or any other agreement with Elsey or E4.

14. At the outset of the cases, creditor Monterey Capital filed pleadings seeking to have the Court determine that the funds contained in the bank account of the Debtors located at Alliance Bank were the cash collateral of Monterey. Monterey claimed a first position priority lien and sought to preclude the Debtors' use of such funds without Monterey's consent or bankruptcy court approval pursuant to 11 U.S.C. Section 361.

15. There were several hearings held on this dispute, many of which the minute entries and court docket reflect Mr. Elsey personally attended.

16. At the hearings regarding the dispute regarding the Debtor's right to use of the funds in question, the Court ordered that the Debtor could not use these funds without the Court holding a hearing and entering an order allowing the Debtor to access such funds (See Minute entries and orders at Dkt #s 150, 157, 160, 172, 179.1) No such hearing was ever held and no order authorizing the use of these funds absent Monterey's consent was ever entered.

---

1 All references to docket ("Dkt") entries are to the numbers used in Case No. 2-08-bk-6447-RTB.

17. After conversion of these cases, the Trustee entered into a settlement with Monterey acknowledging the funds were in fact the Cash Collateral of Monterey. This settlement was properly noticed and no objection was filed. The order approving that settlement is now a final order. *See* Dkt #274.

18. In violation of the Court's orders, Premiere, acting through Mr. Elsey, who signed each check, issued checks in the amount of $180,000 to E4 from its debtor in possession bank account (Acct # 8010158684 Alliance Bank) during the Chapter 11 as follows: $90,000 by check #1001 on 11/07/2008; $30,000 by check # 1007 on 03/03/2009; $15,000 by check #1006 on 04/02/2009; $15,000 by check # 1008 on 05/13/2009; $15,000 by check #1009 on June 22, 2009; and $15,000 by check # 1010 on 07/14/2009. Hereinafter these payments will be referred to as the "Transfers."

19. None of these Transfers were authorized by a fee application, or the formal assumption of the Agreement. In addition, the Transfers constituted the unauthorized use of creditor Monterey Capital's cash collateral.

20. The Debtors were unsuccessful in their attempts to reorganize and this Court entered an Order converting the cases from Chapter 11 to Chapter 7 of the Bankruptcy Code on July 31, 2009.

21. On August 5, 2009, the Court appointed Brian J. Mullen as Chapter 7 Trustee.

22. At the Chapter 7, Section 341 meeting, Elsey acknowledged under oath that it was his/E4's duty to repay these funds to the bankruptcy estate. Elsey testified that he would return the funds to the Trustee no later than October 16, 2009. To date, neither Elsey nor E4 has repaid these funds to the Trustee.

2822481v2

# COUNT ONE
## Post-Petition Transfers Under 11 U.S.C. § 549

23. Plaintiff incorporates by reference the allegations contained in paragraphs 1-22 as if fully set forth herein.

24. The Transfers to E4 all occurred post-petition and all involved estate property, i.e., cash held by the Debtors in the Debtors' bank accounts.

25. None of the Transfers were authorized by court order. The Transfers also constituted the unauthorized use of creditor Monterey Capital's cash collateral in violation of this Court's orders.

26. Defendants Elsey and E4 were the parties that received the Transfers..

27. Pursuant to 11 U.S.C. § 550, the Trustee may recover, for the benefit of the bankruptcy estate, transfers of property avoided pursuant to 11 U.S.C. § 549, including the Transfers made to or for the benefit of Elsey and/or E4

WHEREFORE, the Trustee requests this Court enter judgment against Elsey and E4, as follows:

 (a) avoiding the Transfers;

 (b) ordering the Defendants to pay to the bankruptcy estate in care of the Trustee, cash equal to the Transfers;

 (c) awarding the Trustee his fees and costs incurred herein together with accruing costs; and

 (d) for such other and further relief as the Court may deem just and reasonable under the circumstances.

2822481v2

RESPECTFULLY SUBMITTED this 15th day of December 2009.

**OSBORN MALEDON P.A.**

By: /s/Warren Stapleton
James E. Cross, Esq.
Warren J. Stapleton, Esq.
2929 North Central, Suite 2100
Phoenix, Arizona 85012
Counsel for Chapter 7 Trustee